## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**February 27, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MEGAN W.,**
**Respondent Below, Petitioner**

**v.) No. 23-ICA-353**  (Fam. Ct. of Jefferson Cnty. Case No. FC-19-2021-D-58)

**ROBERT R.,**
**Petitioner Below, Respondent**

### MEMORANDUM DECISION

Petitioner Megan W.[1] ("Mother") appeals the August 7, 2023, final order of the Family Court of Jefferson County. In its order, the family court granted Respondent Robert R.'s ("Father") motion to modify custody and denied Mother's petition to relocate with the children. Father and the guardian ad litem ("GAL") filed summary responses in support of the family court's order.[2] Mother did not file a reply. The issues on appeal are whether the family court erred by finding there was a substantial change in circumstances to warrant a custodial modification and whether the family court erred by denying Mother's petition to relocate.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mother and Father were formerly married and share two minor sons, currently ages ten and eight.[3] The parties were divorced in the Commonwealth of Pennsylvania on January 26, 2018. The divorce order was registered as a foreign judgment with the Family Court of Jefferson County in February of 2021, and on August 23, 2021, Father filed a

---

[1] To protect the confidentiality of the children involved in this case, we refer to the parties' last name by the first initial. *See* W. Va. R. App. P. 40(e); S*tate v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990).

[2] Mother is represented on appeal by Erica M. Brannon, Esq., and Father is represented by Christopher D. Janelle, Esq. Robin S. Prinz, Esq. appears as GAL for the children.

[3] The children were ages nine and seven at the time of the underlying proceedings.

1

petition to modify custodial allocation. On January 11, 2022, the family court entered a final order, which granted Mother primary custody of the children and granted Father visitation every other weekend. On January 13, 2023, Father filed a motion to modify that order, alleging there was a substantial change in circumstances based upon Mother's interference with his scheduled visitations, Father's establishment of his own residence since the entry of the January of 2022 order, and the children's stated preference for Father to have additional parenting time. Father maintained that the modification was in the children's best interests. At the time of this filing, Mother resided in Charles Town, West Virginia and Father resided in nearby Frederick, Maryland.

The family court conducted an initial hearing by proffer on January 31, 2023, and a status hearing was held on March 15, 2023, at which time the family court appointed a GAL to investigate the matter and file a written report. On March 23, 2023, Mother filed a petition for relocation, seeking to relocate with the children from her residence in Charles Town to Huntington. In her petition, Mother maintained that the relocation was for her professional and educational advancement with her current employer and that the anticipated relocation would take place "on or about May 2023." The family court set both matters for a final hearing on June 22, 2023.[4] On June 12, 2023, the GAL's report detailing her investigation and findings was filed with the family court and served on the parties.

Through her investigation, the GAL found evidence that Mother was engaging in parental alienation of Father. On this issue, the GAL determined that among other things, Mother was regularly interfering with Father's scheduled visitations by not being at her home with the child at Father's allotted visitation pick up time, or by falsely stating that one of the children was sick or injured; requiring the children to refer to their Stepfather as "Dad" and their biological father as "Robert" and naming the Stepfather as the children's father on school emergency contact forms; making disparaging statements about Father in front of the children and having Stepfather to do the same; making false statements to school personnel about Father's parental fitness; interrogating the children upon their return from each visitation with Father; alleging false claims that the children were injured during Father's visitation and requiring the children to pose for photographs of the alleged injuries; and instructing the children to tell Father that their life at Mother's home is "confidential" and not of his concern.

The GAL also found evidence that the children had been coached or influenced to speak negatively of Father but positively of Mother, noting that in multiple one-on-one interviews with the children, they each rattled off verbatim statements echoing a dislike for Father, that he did not care about them, that he did not pick them up from school when they

---

[4] The family court set Father's motion for a June 22, 2023, final hearing following the March 15, 2023, status hearing. On March 30, 2023, the family court entered an order setting Mother's petition for hearing on June 22, 2023, noting in its order that this date was "the earliest possible time available to the [family] [c]ourt."

were sick or assist them with homework, and that they wanted to relocate with Mother. The GAL found the children's statements about Father suspect given that he only had visitation every other weekend, school personnel confirmed there was no homework given on the weekends, and because Father works dayshift as a truck driver and Mother, who works nights, is the parent at home during school hours. The GAL further noted that the children gave positive opinions of Father when she met with them at their schools. The GAL believed the children were "caught in the middle" of their parents' custody battle, making it difficult to determine their actual feelings on the matter. The GAL also found that Mother's petition for relocation was also indicative of parental alienation because she did not apply for the position until after Father filed his motion to modify custody, and the relocation would move the children nearly six hours away from Father.

Through her review of a prior Child Protective Services ("CPS") referral, the GAL discovered that in October of 2022, Mother and Stepfather had engaged in domestic violence in front of the children, resulting in Mother leaving the home with the children through a window. The children confirmed this incident to the GAL with both children being visibly upset when discussing the event. The children also disclosed that Mother and Stepfather regularly argue in the home, and that they felt the home was safer when Stepfather was not there. However, Mother and Stepfather did not disclose the domestic violence incident to the GAL and Father had no knowledge the incident occurred. The GAL believed it was in the best interests of the children to repair their relationship with Father and, thus, she recommended that Mother's petition for relocation should be denied and that Father should be given primary custody of the children with Mother receiving regular visitation.

On June 22, 2023, and July 17, 2023, the family court held a final hearing on the motion to modify custody and petition for relocation. Mother and Father each testified, and the GAL's report was admitted into evidence without objection from the parties.[5] It was also determined that Mother had relocated with the children to Huntington while her petition was still pending and without the consent of the family court.

On August 7, 2023, the family court entered its final order, denying Mother's petition for relocation and granting Father's motion to modify custody. In ruling on both matters, the family court expressly found that the GAL's report was entitled to significant weight in that it was comprehensive, and its findings were undisputed.

The family court found that Mother's evidence was contrary to the stated reasons in her petition for relocation and that her testimony regarding her petition, the domestic violence incident, and allegations of parental alienation was not credible. Here, the family court found no credibility in Mother's testimony that she sought to relocate for the

[5] During these hearings, the parties were represented by counsel. Mother obtained new counsel for this appeal.

professional and career advancement of herself and Stepfather because the evidence showed that Mother transferred to a lesser paying job, that Stepfather remained unemployed, and that Mother unilaterally relocated without court approval. For these same reasons, the family court also found no credibility in Mother's testimony that her relocation was not a further attempt to alienate Father's relationship with the children.

The family court was also troubled by Mother's steadfast denial of the domestic violence incident when the evidence clearly showed this event occurred and that the children were traumatized as a result. Further, the family court found that the evidence supported a finding of parental alienation by Mother in this case. The family court found that Mother had engaged in parental alienation through such conduct as: interfering with Father's allotted visitation; forcing her children to call Stepfather "daddy"; naming Stepfather as the children's "father" on their school's emergency contact information; disparaging Father in front of the children on a regular basis and encouraging Stepfather to do the same; and by falsely claiming the children suffered injury in Father's care, among others.

Ultimately, the family court found it was contrary to the best interests of the children to relocate with Mother. The family court also found there had been a substantial change in circumstances to warrant modifying its prior order on custodial allocation, and that the children's best interests would be served by placing them in Father's primary custody.[6] The family court awarded Mother visitation one weekend per month during the school year with expanded summer, holiday, and spring break visitation. The family court also established Mother's monthly child support obligation. This appeal followed.

On appeal, we apply the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."

Syl., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004); *Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

---

[6] In its order, the family court further noted that had Mother not relocated several hours away, it would have given serious consideration to applying the statutory presumption for an equal (50-50) custody allocation. *See* W. Va. Code § 48-9-102a (2022). Given the new distance between Mother's and Father's residences and school age of the children, we agree with the family court that a 50-50 custody arrangement is unworkable.

Mother's appeal raises two assignments of error, which we will address in turn. First, Mother assigns error to the family court's decision to grant Father's motion to modify custody and to deny her petition for relocation. For purposes of clarity, we will address Father's motion and Mother's petition separately.

Regarding Father's motion for modification, Mother argues that Father failed to establish that there was a substantial change in circumstances as required by West Virginia Code § 48-9-401 (2022). She also advances alternative arguments. She argues that even if Father established a substantial change in circumstances, he should not have been given primary custody, and that even if the family court's modification in this case was reasonable, its order should have provided for the children's gradual integration into Father's primary care instead of an immediate change in custody.

In support of these arguments, Mother maintains that Father only sought a modification based upon his establishment of a new home and the children's stated preference for more parenting time. Noticeably, Mother omits any reference to Father's third basis for the modification, specifically, Mother's repeated interference with his parenting time. In fact, Mother's appeal does not challenge this allegation, nor does she challenge the family court's finding of parental alienation, which was at the heart of the family court's finding that a substantial change in circumstances existed, and that transferring primary custody to Father was in the children's best interests. Because Mother failed to raise or argue any issue in her brief related to the family court's finding of parental alienation, that matter is waived. *See State v. LaRock,* 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised ... are not considered on appeal.").

Mother also maintains that because the children were under the age of fourteen, neither child was old enough to state a firm preference for additional parenting time with Father. *See* W. Va. Code § 48-9-402(b)(3) (2022) (permitting a court to modify a parenting plan based upon the firm preferences of a child who has attained the age of fourteen). Mother's argument is not persuasive because there is nothing in the family court's order to indicate that the stated preference of either child contributed to the family court's ultimate decision on any issue below.

Mother also raises objections to the GAL's investigation and subsequent report. However, there is no merit to those challenges because the family court's order plainly states that the GAL's report was admitted without objection by either party. Because Mother failed to challenge the GAL's report below, she has waived such challenges on appeal. As our Supreme Court of Appeals has previously held, "[o]ur general rule is that nonjurisdictional questions raised for the first time on appeal, will not be considered." *Battista v. Battista*, No. 23-ICA-40, 2023 WL 5695427, at *2 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision) (quoting *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citation omitted)).

Further, our Supreme Court of Appeals has noted that:

> Questions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused. Further, in . . . custody matters, we have traditionally held paramount the best interests of the child."

*Andrea H. v. Jason R.C.*, 231 W. Va. 313, 317, 745 S.E.2d 204, 208 (2013) (quotations and citations omitted).

Upon our review of the record, we find that the family court did not abuse its discretion when it granted Father an immediate change in custody, finding that a modification of primary custody was in the best interests of the children based upon Mother's acts of parental alienation. Therefore, we decline to disturb this ruling on appeal.

Next, we address Mother's challenge to the family court's denial of her petition for relocation. On this issue, she argues: (1) she had to move without family court approval because the family court failed to schedule the hearing within thirty days as required by West Virginia Code § 48-9-403(c) (2021); (2) the family court failed to consider Mother's new proposed parenting schedule and implement a new parenting plan that was in the children's best interests; and (3) the family court erred in finding that her relocation was not for a legitimate purpose. We are not persuaded by these arguments.

First, the family court gave no credibility to Mother's testimony in support of her petition for relocation. Mother does not challenge this finding on appeal and this Court gives deference to such determinations. *See Vogt v. Macy's, Inc.*, No. 22-ICA-162, 2023 WL 4027501, at * 6 (W. Va. Ct. App. June 15, 2023) (memorandum decision) ("[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court . . . will not, second guess such determinations") (quoting *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997)).

Next, we turn to Mother's argument that the family court failed to schedule a hearing on her petition for relocation within thirty days and failed to address the delay in its final order as required by statute. On this issue, West Virginia Code § 48-9-403(c) requires, in part:

> A hearing on the petition shall be held by the court at least 30 days in advance of the proposed date of relocation. A parent proposing to relocate may move for an expedited hearing upon the petition in circumstances under which the parent needs an answer expeditiously. If the hearing is held fewer than 30 days in advance of the proposed date of relocation, the court's order shall

include findings of fact as to why the hearing was not held at least 30 days prior to the petition's proposed date of relocation.

Upon a plain reading of this statute, there is no statutory obligation upon the family court to give Mother a hearing within thirty days. Instead, the statute states a hearing is to be held *at least* thirty days prior to the date of relocation. In its order setting the petition for hearing, the family court noted June 22, 2023, was its earliest available date. Nevertheless, the statute provides that Mother could have sought an expedited hearing; however, there is nothing in the record to suggest that she sought the same.

Contrary to Mother's argument, the statute only requires that a family court make written findings regarding the thirty-day requirement when it holds a hearing *fewer* than thirty days prior to the proposed relocation. Because the hearing was held after Mother voluntarily relocated, the family court was not required to provide justification in its order on this issue. Further, Mother fails to cite to the record to show that an objection was made before the family court regarding the timeliness of her hearing to preserve the issue for appeal. *See* Syl., *Smith v. Holloway Const. Co.*, 169 W. Va. 722, 289 S.E.2d 230 (1982) (citations omitted) ("Where objections were not shown to have been made in the [family] court, and the matters concerned were not jurisdictional in character, such objections will not be considered upon appeal.").

Likewise, we decline to disturb the family court's rulings regarding the parenting plan and its finding that Mother did not have a legitimate basis for her proposed relocation. As this Court has previously held:

> Under the new version of West Virginia Code § 48-9-403 (2021), the burden rests on the relocating parent to prove that "(A) [t]he reasons for the proposed relocation are legitimate and made in good faith"; "(B) that allowing relocation of the relocating parent with the child is in the best interests of the child as defined in § 48-9-102 of this code"; and "(C) there is no reasonable alternative, other than the proposed relocation, available to the relocating parent that would be in the child's best interests and less disruptive to the child."

*Katherine A. v. Jerry A.*, 248 W. Va. 672, 674, 889 S.E.2d 754, 756 (Ct. App. 2023).

The record in this case shows that Mother failed to prove any of these required factors. As previously established, the family court found that Mother had engaged in a course of conduct which supported a finding of parental alienation and that Mother's testimony was not credible. Mother did not challenge those findings in this appeal. Furthermore, Mother offers no argument on appeal that these factors were met, but rather, merely argues in passing that the family court erred by finding her relocation was not legitimate. It is well established that, "[a] skeletal 'argument,' really nothing more than an

assertion, does not preserve a claim[.]" *State v. Lambert*, 236 W. Va. 80, 100, 777 S.E.2d 649, 669 (2015) (quotations and citations omitted). *See also LaRock*, 196 W. Va. at 302, 470 S.E.2d at 621 ("issues which are . . . mentioned only in passing . . . are not considered on appeal").

Moreover, the mere presence of error by a family court when ruling on a petition for relocation does not automatically constitute reversible error. Instead, such error is harmless when the family court's ultimate decision is based upon the best interests of the children. *See Storrie v. Simmons*, 225 W. Va. 317, 326-327, 693 S.E.2d 70, 79-80 (2010) (stating that any error in a family court's finding that proposed relocation was not reasonable was harmless where the family court properly based its conclusion on the best interests of the children). Here, the family court's order clearly states its decision was based upon the children's best interests. Thus, even if Mother had established any of the errors she alleged with respect to the family court's consideration of her petition for relocation, those errors would be rendered harmless because the family court decided the matter based upon the best interests of the children.

In her final assignment of error, Mother argues that the family court erred and abused its discretion by failing to require Father to provide written proof of income when Mother had filed a motion for financial discovery. However, Mother offers no argument on this issue on appeal. Rather, when presumably addressing this assignment of error, Mother's brief simply states in its conclusion that "Mother asks that the child support be recalculated based upon verified income." Because Mother failed to address this assignment of error in her brief, we deem the matter waived. *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 307, 284 S.E.2d 374, 376 (1981) ("[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."); W. Va. R. App. P. 10(c) (stating this Court may disregard errors not adequately supported by specific references to the appellate record).

Accordingly, we find no error or abuse of discretion and affirm the family court's August 7, 2023, final order.

Affirmed.

**ISSUED:** February 27, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear