# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**GREGORY SMITH,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-66**   (Fam. Ct. Cabell Cnty. Case No. FC-06-2022-D-354)

**KERRI SMITH,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gregory Smith ("Husband") appeals the Family Court of Cabell County's January 30, 2024, final order that found the marital home to be Respondent Kerri Smith's ("Wife") separate property. Wife filed a response in support of the family court's order.[1] Husband filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in July of 2016 and last lived together in May of 2022. Prior to their marriage, Wife owned her own home. During the parties' marriage, Wife sold her premarital home for a profit of $88,000, which she placed in a bank account that was in her name only. At some point prior to the sale of her premarital home, Wife received an inheritance from a deceased relative, which she also placed into her separate account. On January 18, 2019, the parties' marital home ("home") was purchased for $112,000. $8,538.37 was paid at closing and the remaining balance was financed by Wife. The deed to the home was placed solely in Wife's name.

In July of 2022, Wife filed for divorce. After an initial hearing, the family court entered a temporary order awarding Wife temporary possession of the home and stated that equitable distribution matters would take place at the final hearing, which was scheduled for March 7, 2023.

---

[1] Husband is represented by Paula L. Harbour, Esq. Wife is represented by Arik C. Paraschos, Esq.

On March 3, 2023, Wife filed a motion asking the family court to deem the home as her separate property. In her motion, she asserted that the home was purchased with the funds acquired from the sale of her premarital home that were kept in her separate bank account. Wife alleged that she used the funds from that bank account to renovate, upkeep, and pay the mortgage on the new home. She argued that the home was never commingled or transmuted into marital property because she solely contributed her separate funds of inherited money to the down payment, placed her name alone on the deed and mortgage, and made all mortgage payments with the money from her separate, non-marital bank account. She contended that Husband contributed neither his separate funds nor marital funds to pay the mortgage. She also refinanced the home solely in her name. Wife filed 120 pages of exhibits in support of her motion. Husband did not file a response to Wife's motion.

On March 7, 2023, the family court held a final hearing on the equitable distribution. After taking testimony regarding other property issues, the court informed the parties that Husband needed to respond in writing to Wife's motion to deem the marital home her separate property. The following colloquy then took place:

MS. HARBOUR: That's fine. So we don't need to argue the house?

THE COURT: Respond in writing, and then I will decide whether I want to take more testimony or I'm just going to rule on the motion.

MR. PARASCHOS: That works.

MS. HARBOUR: Okay. All right. That's fine. That's fine.

The parties then requested that the court bifurcate the issue of the home and grant the parties a divorce.

On April 5, 2023, Husband filed his response in opposition to Wife's motion, along with eighty pages of exhibits. In his response, Husband alleged that although the down payment and mortgage were paid from Wife's bank account, that account was commingled with marital funds. Specifically, Husband attached exhibits alleging that Wife's paycheck during the marriage was deposited into her separate account. Husband further asserted that he was the contractor who completed all the renovations on the home from January of 2019 through May of 2019 and added a 14' by 18' addition to the home between April of 2020 and June of 2020. He alleged that two assistants helped him, and he passed other job opportunities to complete the home's remodeling. Husband also contended that the material for the renovations was paid out of the parties' joint bank account. Additionally, he asserted that it was necessary for Wife to obtain both mortgages because he had difficulty verifying income for loans due to his self-employment. Husband also attached an appraisal report that valued the home for $203,400 in July of 2022. Thus, he argued that

it was his labor and his foregoing of other job opportunities that increased the value of the home by $91,000, and that the home should be considered marital property.

On June 6, 2023, the parties were divorced by a Bifurcated Final Divorce Decree. On August 21, 2023, based on Wife's motion, Husband's response, and their exhibits, the family court entered an order determining that the home was not marital property because it was exchanged for property that Wife acquired before the marriage. The order stated that another order regarding the decision would be forthcoming.

On January 30, 2024, the family court entered a final order that deemed the home as Wife's separate property. In support of its decision, the family court cited to *Miller v. Miller*, 189 W. Va. 126, 428 S.E.2d 547 (1993) and *Odle v. Eastman*, 192 W. Va. 615, 453 S.E.2d 598 (1994). The family court, in explaining the reason for its decision, stated that in *Miller*, the Supreme Court of Appeals of West Virginia ("SCAWV") concluded that a residence acquired during a marriage and improved with marital funds was still considered separate property because the title was never transferred into the joint names of both parties. *Miller*, 189 W. Va. at 130, 428 S.E.2d at 551. The Court held that even when property is acquired during a marriage and used for a marital home, it may still be characterized as separate property when the character of the property has not significantly changed. *Id*. In *Odle*, the SCAWV held that even though the land was purchased during the marriage and used for marital purposes, it was separate property because it was purchased with separate property. *Odle*, 192 W. Va. at 619, 453 S.E.2d at 602.

The family court found that Wife's home met the statutory definition of separate property because it was "acquired by a person during marriage in exchange for separate property which was acquired before the marriage." The court went on to explain that Wife used her separate funds to renovate, upkeep, and pay the mortgage on the home from her separate account. The court found that the use of the home as a marital home was not enough to change the characterization of the property to marital based on the following: (1) the down payment on the home was paid from Wife's separate account that was funded from her family inheritance; (2) the home was titled in Wife's name only; (3) the mortgage, renovations, and upkeep was paid from Wife's separate account because Wife had deposited the profit from her premarital home into that account; (4) the funds in Wife's separate account were never commingled with marital funds; and (5) the home was refinanced solely in Wife's name. Thus, the family court concluded that the home was never intended to be marital property, was not transmuted into marital property by the commingling of marital funds, and was paid for by Wife's separate property alone. It is from the January 30, 2024, order that Husband now appeals.

When reviewing the order of a family court, we apply the following standard of review:

3

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Husband raises five assignments of error. However, as his last two are closely related, they will be consolidated. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

As his first assignment of error, Husband, without citing to the record, argues that the family court erred by failing to hear testimony regarding the equitable distribution of the home.[2] He contends that since there was no testimony for the court to consider which adequately discussed payments, accounts, and funds pertaining to the home, the family court's order was insufficient for effective appellate review. We are unpersuaded by this argument.

The SCAWV has held, "[o]ur general rule is that nonjurisdictional questions raised for the first time on appeal, will not be considered." *Battista v. Battista*, No. 23-ICA-40, 2023 WL 5695427, at *2 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision) (quoting *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citation omitted)). *See also* Syl., *Smith v. Holloway Const. Co.*, 169 W. Va. 722, 289 S.E.2d 230 (1982) (citation omitted) ("Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered upon appeal."). Further, this Court "will not consider an error which is not properly preserved in the record nor apparent on the face of the record." Syl. Pt. 4, *State v. Browning*, 199 W. Va. 417, 418, 485 S.E.2d 1, 2 (1997).

---

[2] The Court notes that Husband has the duty to support his arguments with citation to authority as well as "appropriate and specific citations to the record . . ." W. V. R. App. P. 10(c)(7). Otherwise, "[t]he Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal." *Id.* Additionally, Husband's brief contains a single argument section that does not fall "under headings that correspond with the assignments of error." *Id*. However, because disregarding errors in noncompliance with the rules are in this Court's discretion, in this instance, we will resolve the errors, nonetheless.

Here, nothing in the record establishes that Husband preserved this issue for review on appeal. He failed to object to the family court's decision to base its ruling of the home on the parties' pleadings. Instead, Husband was agreeable to the court's procedural decision to rule on the matter without a hearing when his attorney responded "[o]kay. All right. That's fine. That's fine." *See* Syl., *Smith v. Holloway Const. Co.*, 169 W. Va. 722, 289 S.E.2d 230 (1982) (citations omitted) ("Where objections were not shown to have been made in the [family] court, and the matters concerned were not jurisdictional in character, such objections will not be considered upon appeal."). Thus, we conclude that Husband waived his first assignment of error and decline to consider the same.

Next, Husband argues that the family court failed to consider that Wife's separate property was commingled with her earnings acquired during the parties' marriage. We find no merit in this argument. The court's order specifically stated that it "reviewed the evidence submitted by the [parties]" and made a finding that "the funds [Wife] obtained from selling her [separate] property were never commingled with marital funds[.]" The order also discussed Wife's bank account, the funds deposited into that account, and found that her account was used to pay for the home and its renovations. Thus, as reflected in the January 30, 2024, order, the family court *did* consider whether there was commingling of separate property with marital property in its determination. Therefore, we find no error.

As his third assignment of error, Husband argues that the family court failed to consider that the renovations were funded by the parties' joint account. He asserts that the home was transmuted into marital property because the renovations were paid for by marital property. In support of his argument, Husband contends that the bank records clearly show that renovations were paid for from the parties' jointly titled account, which was funded by deposits from both parties.

Here, the family court's order stated the following:

[Wife's] home coincides with the statutory definition of separate property as, "property acquired by a person during marriage in exchange for separate property which was acquired before the marriage." [W. Va. Code § 48-1-237 (2001)] . . . [Wife] sold her premarital home after she married [Husband] and received an $88,000 profit that she deposited into a separate savings account. She then used these funds to renovate, upkeep, and pay the mortgage on the new home. This shows that [Wife] exchanged the proceeds from her premarital home sale which was her separate property she acquired before marriage, to her new home. While the new home was renovated and mortgage payments were made during the marriage, the [Supreme] Court [of Appeals of West Virginia] tells us it is still separate property because the mortgage on the home was paid for through [Wife's] separate account with the proceeds from her previous home. . . . [Wife] paid the down payment on the home through a separate savings account solely titled in her name funded

5

from her family inheritance. Therefore, there is no presumption that the checking account was marital property. . . .[Wife] renovated the home with her own separate funds throughout the marriage and [Husband] never contributed funds to pay the mortgage.

"[W]ith regard to the family court's factual findings that underlie its equitable distribution order, [the appellate court] will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous." *Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). Although Husband contends that the bank accounts clearly show that renovations were funded by the parties' joint account, on review, he failed to include any pinpoint citations to the record herein to justify his assertion and, without such citation, we are unable to determine which transactions are indicative for the renovations. Absent this justification, we conclude that the court's findings were not clearly erroneous, and that the court *did* consider how the renovations were funded and from what account they were funded from; thus, we find no error.

Lastly, Husband argues that the family court failed to consider that he performed the labor and maintenance renovating the home and that he turned down other job opportunities during the renovations. He contends that the home was transmuted into marital property because, as a contractor, it was his labor that increased the home's value from $112,000 in 2019 to $195,000 in 2020.

In *Miller,* the SCAWV addressed similar issues raised by Husband. There, the husband received a house as a gift from his mother while the parties were married. *Miller* 189 W. Va. at 128, 428 S.E.2d at 549. The wife contended that the home was transmuted to marital property because of the increased value in the house due to an expenditure of marital funds and work performed by both of the parties. *Id.* at 129, 428 S.E.2d at 550. The wife introduced evidence of the home's increased value by showing the home's appraised value. *Id.* at 130, 428 S.E.2d at 551. However, the appraisal only assessed the fair market value of the entire property, including improvements, failing to appraise the improvements separately. *Id*. Consequently, the *Miller* Court ruled that the wife failed to provide sufficient evidence to prove the specific value of the improvements, and thus they could not be awarded to her through equitable distribution. *Id.* Furthermore, despite marital fund expenditures and labor or any efforts by the parties during the marriage there was no evidence of intent by the husband to change the character of the property. *Id.* Specifically, the *Miller* Court emphasized that the husband did not transfer the title of his separate property into the joint names of the parties. Thus, the *Miller* Court upheld the lower court's decision to deem the home separate property. *Id.*

In the instant case, while we agree with Husband that "both parties have the burden of presenting competent evidence concerning the value of the property" pursuant to syllabus point three in *Roig v. Roig*, 178 W. Va. 781, 364 S.E.2d 794 (1987), other than the 2019 and 2020 appraisals for the fair market value of the home, we are unable to locate

6

anything in the record delineating the separate value of the improvements from the renovations, the value of Husband's labor, and how and to what extent his labor limited his earning ability. Thus, we must conclude that Husband failed to meet his burden of producing competent evidence of which he assigns error for the family court to have adequately considered. Therefore, in conjunction with *Miller*, we find no error.

Accordingly, based on the foregoing, we affirm the Family Court of Cabell County's January 30, 2024, final order.

Affirmed.


**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear