IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**August 6, 2025**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**KATELIN C.,**
**Petitioner Below, Petitioner**

**v.)  No. 24-ICA-473**   (Fam. Ct. Nicholas Cnty. Case No. FC-34-2020-D-23)

**DONOVAN C.,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Katelin C.[1] ("Mother") appeals the Family Court of Nicholas County's October 30, 2024, order that granted Donovan C.'s ("Father") petition for modification of the parenting plan that permitted the paternal grandparents to have visitation with the parties' child at Father's discretion. Father and the child's guardian ad litem ("GAL") filed responses in support of the family court's order.[2] Mother did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties are the parents of one child, who was born in 2014. They share equal 50-50 custody of the child. In August of 2022, Mother filed a petition for modification, which alleged that the paternal grandparents ("Grandparents") abused and neglected the child.[3] CPS conducted an investigation, which included two separate forensic interviews

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is self-represented. Father is represented by Hannah Tothe, Esq. The GAL for the child is Taylor Graham, Esq.

[3] The petition for modification was not submitted to this Court on appeal.

1

of the child. CPS found that the allegations were unsubstantiated. Nonetheless, on December 27, 2022, the family court entered an order on Mother's petition for modification prohibiting contact between Grandparents and the child.

On March 1, 2023, Father filed a petition for modification, seeking to modify the December 27, 2022, order. At some point, Grandparents filed a petition for visitation in a separate civil matter. By agreed order entered March 14, 2024, Mother and Father agreed that "issues surrounding the paternal grandparents shall be handled with this [c]ourt in [Grandparents'] separate matter."

On April 3, 2024, the family court held a final hearing in Grandparents' case regarding their contact with the child. Counsel for Mother represented to the court that the matter should be dismissed. The court agreed and dismissed Grandparents' separate civil action.

On April 30, 2024, Father filed a motion for reconsideration of the family court's March 14, 2024, agreed order, asserting that Mother misrepresented the parties' agreement since she moved for the dismissal of Grandparents' separate action. Father contended that he would have never entered into the agreement had he known that Mother intended to move to dismiss Grandparents' visitation action.

After hearing argument on the matter, the family court entered an order on May 31, 2024, granting Father's motion for reconsideration and setting aside the sentence in the March 14, 2024, agreed order that stated the "issues surrounding the paternal grandparents shall be handled with this [c]ourt in [Grandparents'] separate matter." The court also scheduled a final hearing for July 22, 2024, to relitigate whether Grandparents should be permitted contact with the child. After a few continuances in the matter, the final hearing was rescheduled to September 20, 2024.

On August 27, 2024, witnesses were subpoenaed to testify in person at the final hearing. On September 13, 2024, Father filed a motion for licensed psychologist, Timothy S. Saar, and clinical psychologist, Michael Morello, to appear telephonically, which the court granted by order entered on September 16, 2024.

On September 20, 2024, the parties appeared for a final hearing on whether Grandparents should be permitted contact with the minor child. After hearing testimony and argument, the family court entered an order on October 30, 2024, finding the following: the allegations against Grandparents were inconsistent; Mr. Morello's testimony that the child lied and was not credible was concerning; the GAL found the child to be credible and recommended that it was in the child's best interest to have no contact with Grandparents; Dr. Saar testified that he believed the child had been influenced by Mother's boyfriend, Jeremy Y., to make negative comments or allegations about Father and Grandparents; and that Father "had met his burden of proof of a preponderance of the evidence" that it should

be Father's decision as to whether Grandparents should be permitted contact with the child. Thus, this order modified the no contact provision of the December 27, 2022, order between Grandparents and the child. It is from this order that Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises eleven assignments of error, several of which are similar; as such, they will be consolidated accordingly for our discussion below. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

First, Mother argues that the family court erroneously considered evidence regarding Jeremy Y.'s contact with the child because the basis for the modification pertained to Grandparents' contact with the child. We disagree. Our Legislature has long declared that "the public policy of this state [is] to assure that the best interest of children is the court's primary concern in allocating custod[y.]" W. Va. Code § 48-9-101 (2001). In determining whether to modify a parenting plan order, a family court must consider whether the modification is in the child's best interests. *See* W. Va. Codes §§ 48-9-401 and 402 (2022). Upon review of the record, Jeremy Y. lives with Mother and purportedly assists her in taking care of the child. Because Jeremy Y.'s testimony regarding his contact with the child was important for the family court to consider when analyzing the child's best interests, we cannot conclude that the family court erred or abused its discretion by considering evidence pertaining to Jeremy Y.

For Mother's second and third assignments of error, she asserts that the family court abused its discretion by requiring Jeremy Y.'s physical appearance at the hearing and by failing to allow her to be present during Jeremy Y.'s direct examination. In support of her argument, she contends that the court exhibited judicial bias against her because while the family court was aware that Jeremy Y. was watching the child during the hearing, she was required to leave the courtroom and watch the child since Jeremy Y. was summoned to testify in person. Mother further maintains that since the court permitted Dr. Saar and Mr.

3

Morello to testify telephonically, its decision to prohibit Jeremy Y. from testifying telephonically was arbitrary and capricious. We disagree.

Pursuant to Rule 18 of the West Virginia Rules of Practice and Procedure for Family Court, a family court may permit a witness to testify in an evidentiary hearing telephonically; however, it is in the court's discretion. Likewise, West Virginia Code § 51-2A-7(a)(1) (2013) gives family courts the broad authority to "[m]anage the business before them[.]" Such authority extends to "[s]ummon[ing] witnesses and compel[ling] their attendance in court[.]" W. Va. Code § 51-2a-7(a)(2). Here, Dr. Saar and Mr. Morello were permitted to testify by phone because Father previously filed motions to appear telephonically on their behalf. As the SCAWV has held,

> An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 7, *State ex rel. Hatcher v. McBride*, 221 W. Va. 760, 656 S.E.2d 789 (2007). A review of the record reveals that Jeremy Y. made no motion requesting to appear telephonically although he was summoned approximately three weeks prior to the final hearing.

Further, upon a review of the hearing, the family court inquired of Mother's presence during Jeremy Y.'s testimony. Counsel for Mother stated, "[w]e discussed it, and she is going to just sit out for this." "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009); *see also* Syl., *Smith v. Holloway Const. Co.*, 169 W. Va. 722, 289 S.E.2d 230 (1982) (citations omitted) ("Where objections were not shown to have been made in the [family] court, and the matters concerned were not jurisdictional in character, such objections will not be considered upon appeal.").

In response to Mother's allegations of judicial bias, generally, a party contending bias would seek disqualification of the offending judge, pursuant to Rule 58 of the Rules of Practice and Procedure for Family Court.[4] No motion for disqualification of the family

---

[4] Rule 58 of the Rules of Practice and Procedure for Family Court states the following:

(a) The procedure for disqualification of family court judges shall be the same as that set forth in Trial Court Rules for Trial Courts of Record, Rule 17.

court judge was filed below. "As noted in Rule 58, which references Rule 17 of the Trial Court Rules, decisions regarding disqualification of judges are made by the Chief Justice of the SCAWV and are not the province of this Court." *In re C.S.*, 251 W. Va. 147, ___, 909 S.E.2d 819, 823-824 (Ct. App. 2024). Moreover, Mother did not substantiate her claim of bias and has not established that her due process rights were violated at any time during the proceedings. *See Xerxes R. v. Richard P.*, No. 24-ICA-76, 2024 WL 5003524 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision). Therefore, we are unable to find that the family court clearly erred or abused its discretion surrounding Jeremy Y.'s testimony.

For her fifth assignment of error, Mother argues that the family court erroneously refers to Mr. Morello as a doctor. We find no merit in this argument. Mother failed to show how her case was negatively affected by referring to Mr. Morello as a doctor, which amounts to, if anything, harmless error. *See William M. v. W. Va. Bureau of Child Support Enf't*, No. 20-0620, 2021 WL 3833867, at *3 (W. Va. Aug. 27, 2021) (memorandum decision) (finding alleged error by family court harmless where petitioners failed to show that they suffered prejudice or had their substantial rights adversely affected by alleged error).

As to Mother's remaining assignments of error, she argues that the family court's ultimate determination was based upon its erroneous credibility determinations regarding various witnesses' testimony and its failure to properly weigh the evidence. First, it is well established that "[a] reviewing court cannot assess witness credibility through a record. The [family court] is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Secondly, "[a]n appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact." *In re the Marriage/Child. of Matt N. v. Michele I.*, No. 14-0090, 2014 WL 6724758, at *5 (W. Va. Nov. 25, 2014) (memorandum decision) (citing *State v. Guthrie,* 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995)). Upon review of the hearing, the family court heard both parties' arguments and properly determined which evidence was salient to the issues being considered and the weight such evidence should be afforded. Though Mother may not agree with the credibility determinations made by the family court or its weighing of

---

(b) Assignments to Hear Emergency Matters Pending a Ruling; Assignments in the Event of Disqualification. The chief justice of the Supreme Court of Appeals may assign another family court judge, a former family law master or family court judge, circuit court judge or senior status circuit court judge to hear emergency matters pending a ruling. In the event a disqualification motion is granted the chief justice shall promptly assign another family court judge, a former family law master or family court judge, circuit court judge or senior status circuit court judge to preside over the case.

the evidence, her simple disagreements do not entitle her to relief. Thus, we cannot conclude that the family court's findings were clearly wrong or the application of the facts to the law was an abuse of discretion.

Accordingly, we affirm the Family Court of Nicholas County's October 30, 2024, order.

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White